IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH SCHAUER, *et al.*, <br><br> v. <br><br> EMERGE, INC. | Civil Action No. CCB-22-cv-731 |

### MEMORANDUM

Three individual plaintiffs filed this lawsuit under the Fair Labor Standards Act and various provisions of Maryland employment law claiming the defendant, Emerge Inc., deprived them of statutorily mandated overtime wages. After a period of discovery, Emerge now moves for summary judgment, contending that the evidence it introduced verifies that it paid appropriate overtime compensation and that the plaintiffs have not offered sufficient evidence to the contrary. For the reasons that follow, the court agrees with Emerge and will grant its summary judgment motion.

### BACKGROUND

The plaintiffs, Joseph Schauer, James Jefferson, and Khadejah Lovelace, are a combination of current and former employees of Emerge Inc., a non-profit service provider to individuals with disabilities.[1] All three plaintiffs have been employed by Emerge as caretakers, working full-time at hourly rates and adding overtime shifts to earn additional income. They filed this suit under the Fair Labor Standards Act, or the "FLSA," and related provisions of Maryland law to recover purportedly underpaid overtime wages.

---

[1] Plaintiffs Schauer and Jefferson were terminated for failing to become vaccinated. Plaintiff Lovelace is still employed by Emerge. Wamsley Dep. at 49:6-9, ECF 25-4.

1

As Emerge employees, the plaintiffs cared for the organization's clients, "assisting" them "with their daily living needs." See Schauer Aff. ¶ 3, ECF 25-15; Jefferson Aff. ¶ 3, ECF 25-16; Lovelace Aff. ¶ 3, ECF 25-17. This work "included: management and provision of an individual's medication; meal preparation; assistance with getting dressed; assistance with using restroom facilities; assistance attending physicians' appointments; managing the individual's health needs; managing the individual's schedule; assistance with participation in leisure activities; cleaning the individual's residence; performing housekeeping chores, such as laundry; and implementing that individual's daily living program and related tasks." Schauer Aff. ¶ 8; Jefferson Aff. ¶ 8; Lovelace Aff. ¶ 8. Ultimately, the plaintiffs describe their central duty as ensuring that clients were "well taken care of and tended to." See Schauer Aff. ¶ 9; Jefferson Aff. ¶ 9; Lovelace Aff. ¶ 9.

According to the plaintiffs, Emerge employed them in "three different positions" with accompanying job titles and pay grades "depending on when the work was completed." Schauer Aff. ¶ 5; Jefferson Aff. ¶ 5; Lovelace Aff. ¶ 5. These positions were referred to as "Community Living Assistant, Overnight Awake, and Weekend Counselor." Schauer Aff. ¶ 5; Jefferson Aff. ¶ 5; Lovelace Aff. ¶ 5. The plaintiffs explain that the "Community Living Assistant" title was assigned to work "done in the hours of 8:00 a.m. to 12:00 a.m.," the "Overnight Awake" title to work completed "from 12:00 a.m. to 8:00 a.m.," and the "Weekend Counselor" title to work carried out over "the entirety of the weekend." Schauer Aff. ¶ 7; Jefferson Aff. ¶ 7; Lovelace Aff. ¶ 7. Although Emerge classified the plaintiffs' work using these three distinct job titles, the plaintiffs characterize their work as "identical" regardless of the associated job title or shift time. Schauer Aff. ¶¶ 6, 9, 12; Jefferson Aff. ¶¶ 6, 9, 12; Lovelace Aff. ¶¶ 6, 9, 12.

Emerge acknowledges that the plaintiffs held multiple titles corresponding to specific

shift times, but maintains that these positions amounted to "very different jobs." Wamsley Dep. at 52:13-15, ECF 25-4. Emerge Executive Director David Wamsley explained in his deposition that community living assistants integrate clients into the community by facilitating "the activities of daily living that are all centered around work," weekend counselors focus on assisting clients with leisure and recreational activities, and overnight awakes ensure the safety and security of individuals with certain health or behavioral needs. *Id*. at 53:8-54-8, 65:3-66:11. Wamsley acknowledged that some of the ancillary duties involved in these roles—for example, cleaning, administering medication, and running errands—overlap, but maintained that, overall, the differences between each position are "significant." *Id.* at 13:17-14:9, 17:7-19:8, 53:1-2, 54:14-18.

Consistent with its view that community living assistant, overnight awake, and weekend counselor are distinct roles, Emerge compensated the plaintiffs' work in each position at different rates. Wamsley's affidavit explains that Schauer was paid $15.00 an hour as a community living assistant and $10.10 an hour as a weekend counselor; that Jefferson was paid $14.00 an hour as a community living assistant and $11.00 an hour as a weekend counselor; and that Lovelace was paid $13.00 an hour as an overnight awake and $12.75 an hour as a weekend counselor. *See* Wamsley Aff. ¶¶ 15-17, ECF 24-4.

Emerge also paid the plaintiffs overtime when they worked more than 40 hours per week. Overtime work was compensated at time-and-a-half the plaintiffs' regular rate of pay. *Id.* ¶ 12. Emerge determined their regular rates using a weighted average formula: it calculated the sum of the plaintiffs' compensation over the course of a week at their base rates for each position and then divided that total by the total number of hours the employee worked. *Id.* The resulting figure became the basis for calculating the overtime rate, with the time-and-a-half multiplier applied to

each hour worked above 40. *Id.*

To illustrate how the weighted average approach operates, the regular rate of an employee who worked 40 hours per week as a community living assistant at $15.00 an hour and 16 hours per week as a weekend counselor at $10.00 an hour would be $13.57 an hour, producing an overtime rate of $20.36 an hour. The employee's total earnings for the week would thus amount to $868.57—about $90.00 less than the employee would have earned had they been compensated at a base rate of $15.00 an hour for each position (but almost $30.00 more than they would have earned had their overtime been calculated as a product of only the weekend counselor base rate).

The plaintiffs claim this system "artificially and improperly" reduced their regular pay rate and corresponding overtime compensation, so on February 17, 2022, they sued Emerge in the Circuit Court for Howard County, Maryland. *See* Pls.' Class Action Compl., ECF 1-2. The next month, on March 25, 2022, Emerge removed the case to federal court, *see* ECF 1, where the plaintiffs subsequently docketed their complaint, *see* ECF 3. The court entered a scheduling order on April 21, 2022, *see* ECF 15, and the parties conducted discovery over the remainder of that summer.[2]

On September 30, 2022, Emerge moved for summary judgment. *See* ECF 24. The plaintiffs filed a response, *see* ECF 25, and Emerge replied, *see* ECF 26. The summary judgment motion is now ripe for disposition, and no oral argument is necessary to resolve it. *See* Local Rule 105.6.

---

[2] Although the plaintiffs initially styled their complaint as a class action lawsuit, they withdrew their motion for class certification on April 25, 2022. *See* ECFs 16-17.

4

**LEGAL STANDARD**

Emerge moves for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At the summary judgment stage, the court views the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draws all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, though, once the "party seeking summary judgment" has carried its "initial burden of demonstrating to the court that there is no genuine issue of material fact," the "nonmoving party must demonstrate" that "specific, material facts" do indeed exist, over and above "a mere scintilla of evidence," that "give rise to a genuine issue" for trial. *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citations omitted).

**ANALYSIS**

The plaintiffs claim Emerge developed arbitrary job titles and artificial pay grades to avoid paying the full overtime compensation mandated by the FLSA and its corresponding provisions in Maryland law. After reviewing the record evidence, however, the court concludes

5

the plaintiffs have failed to sufficiently substantiate their allegations. The motion for summary judgment will therefore be granted.[3]

Enacted in 1938, the FLSA imposes "minimum labor standards upon covered employers." *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 363 (4th Cir. 2000). Capstone among these standards are two basic guarantees: a federally mandated minimum wage and an accompanying accelerator for overtime pay. Specifically, the Act sets the federal minimum wage at $7.25 per hour and requires overtime pay of "not less than one and one-half times" an employee's "regular rate" for hours worked above 40 per workweek. *See* 29 U.S.C. §§ 206-207.

As a law designed to establish minimum requirements, the FLSA generally embraces the freedom of employers and employees to negotiate good-faith contracts that satisfy its statutory floors. *See Walling v. Helmerich & Payne*, 323 U.S. 37, 42 (1944). At the same time, though, the ultimate imperative in interpreting the FLSA's overtime provision is enforcing its central objectives: "placing financial pressure on" employers to spread employment among more workers and compensating "employees for the burden of a workweek in excess of the hours fixed in the Act." *See id.* at 40 (internal citations omitted). Accordingly, an employee's regular wage must be a bona fide rate of pay—an employer may not circumvent the Act's goals by manipulating the "regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes." *Id.* at 42; *see* 29 C.F.R. § 778.500.

Given the importance of the "regular rate" in determining an employee's overtime pay, it is the subject of a series of Department of Labor regulations providing guidance on how it should

---

[3] Counts II and III of the complaint allege violations of Maryland law under Md. Code Ann., Lab. & Empl. §§ 3-415, 3-420, 3-502. *See* Compl. ¶¶ 28, 40, ECF 3. The parties agree that the analysis under these state law provisions is identical to the FLSA analysis, so the court analyzes the summary judgment motion under the FLSA and applies its conclusions equally to the state law claims. *See* Mem. in Support of Mot. for Summ. J. at 21-22, ECF 24-1; Opp'n to Mot. for Summ. J. at 5 n.1, ECF 25.

be derived across a variety of employment arrangements. *See* 29 C.F.R. § 778.107. At bottom, an employee's "regular rate" of pay under the regulations is their "total remuneration for employment" over the course of a workweek divided by their "total number of hours actually worked" over the same workweek. *Id.* § 778.109. A number of "examples" in the regulations illustrate how this works in practice. *Id.*

Among the illustrations is a formula for deriving the regular wage for an employee "working at two or more rates." *Id.* § 778.115. The regulations provide that where "an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established," the "regular rate for that week is the weighted average of such rates." *Id.* So the employee's earnings "are computed to include" their "compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs." *Id.* This method of calculating overtime wages is referred to as the "weighted average" approach.

As discussed, Emerge compensated the plaintiffs using the weighted average formula. All agree, after all, that the plaintiffs worked "at two or more rates," each of which satisfied the relevant state and federal minimum wage requirements. And Emerge Executive Director David Wamsley testified in his deposition that the various roles the plaintiffs fulfilled for Emerge were "very different jobs." Wamsley Dep. at 52:13-15.

Wamsley elaborated on this characterization in his deposition, explaining how the plaintiffs' caretaker positions shared some overlapping functions, but ultimately varied significantly with respect to their core responsibilities. *See, e.g.*, Wamsley Dep. at 52:13-15. Wamsley's testimony explains that a community living assistant's central duty is integrating clients into the community by facilitating "the activities of daily living that are all centered

7

around work," a weekend counselor's focus is on assisting clients with recreational activities, and an overnight awake's principal concern is ensuring the safety and security of individuals with certain health or behavioral needs. *Id.* at 53:8-54:8, 65:3-66:11. A community living assistant, he continued, is "focused on assisting people in" typical "household weekly routines" like "getting ready for work" and attending appointments, a weekend counselor facilitates leisure time activities including going to the movies, church, or other outings, and an overnight awake monitors clients' bedtime routines and provides as-needed assistance during the course of the night. *See id.* at 53:8-54:18, 65:3-66:4. For these reasons, Emerge viewed the plaintiffs' jobs as substantively distinct roles warranting varying levels of compensation and subject to the Labor Department's regulations applying the weighted average model to overtime pay for employees performing two or more types of work at two or more rates.

There is no dispute that the plaintiffs worked at two or more rates, that Emerge applied the weighted average formula to determine their overtime wages, or that Emerge accurately computed the regular rates based on the plaintiffs' employment agreements. Instead, the plaintiffs claim their jobs were identical regardless of Emerge's labeling, and that Emerge designed its compensation structure to circumvent the FLSA by classifying their work under arbitrary job titles associated with artificial pay grades to deprive them of a bona fide regular rate upon which to base their overtime earnings. The plaintiffs carry the burden of proving this claim, however, and the record evidence they have amassed here is insufficient to defeat Emerge's motion for summary judgment. *See Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 362 (D. Md. 2015).

The plaintiffs' overarching position is that their responsibilities were "identical" across each of their job titles and thus that they did not perform different "types" of work appropriately

compensated at different rates under the FLSA. *See* Opp'n to Mot. for Summ. J. at 5-6, ECF 25 ("Opp'n"). In contesting Emerge's characterization of their roles, however, the plaintiffs focus only on the ancillary areas of overlap between each position—which Emerge has expressly acknowledged—without addressing with any specificity Emerge's distinctions between the heartland of each job.

As evidence of their claims, the plaintiffs point first to "the job descriptions prepared by" Emerge, claiming they "are identical." *Id.* at 6. As the plaintiffs see it, these job descriptions reveal that each "position was responsible for ensuring the general care and health of the individual to which the employee had been entrusted," as well as assistance with specific tasks like "cleaning," "cooking," and "laundry." *Id.* at 6-7.

All agree, however, that providing general care is the primary responsibility of each position. What the plaintiffs overlook is that the job descriptions go on to discuss how that broad and general duty is executed in different and specific ways across each role. Consistent with the Wamsley deposition, the community living assistant description highlights job responsibilities, the weekend counselor description emphasizes "social activities and recreational activities," and the overnight awake description focuses on monitoring clients in "ways that do not interfere with or cause customers to be awakened from sleep." *See* CLA Job Description ¶ 4, ECF 24-8; WEC Job Description ¶ 13, ECF 24-9; AON Job Description ¶ 2, ECF 24-10. These job descriptions corroborate the Wamsley testimony that the core duties of each position are "very different" while doing nothing to undermine that characterization. *See* Wamsley Dep. at 65:19-20. The same is true of the plaintiffs' focus on the overlapping tasks in the job descriptions in areas like cleaning, cooking, and laundry; these similarities are consistent with Wamsley's testimony that some "ancillary activities" are shared across roles without amounting to the central responsibility

of any given position. *Id.* at 65:19-66:19.

The plaintiffs next highlight Wamsley's deposition testimony discussing the overlap in responsibilities between positions. *See* Opp'n at 8-10. Specifically, they emphasize Wamsley's testimony that employees in each role were at times responsible for taking clients shopping, cleaning clients' homes, completing fire drills, administering medication, and preparing meals. *See* Wamsley Dep. at 13:17-21:19, 62:9-18. But again, there is no dispute that the plaintiffs performed overlapping ancillary duties across positions. The plaintiffs' focus on these duties fails to grapple with the elaboration in Wamsley's testimony that, although an employee may perform all these tasks as part of each job, the extent to which they do so varies drastically by position. *See id.* at 53:8-56:18. More importantly, the plaintiffs' focus on this evidence remains wholly nonresponsive to Wamsley's testimony distinguishing the "primary focus" of each role, so again fails to create a genuine dispute of fact. *Id.* at 65:3-66:11.

From there, the plaintiffs turn to their own deposition testimony. *See* Opp'n at 10. They start by invoking the Jefferson deposition, but most of the cited testimony points merely to his conclusory characterization of the positions as "the same." *See, e.g.*, Jefferson Dep. at 13:16-17, ECF 25-5. When Jefferson does finally discuss the specifics of the jobs' similarities, he identifies only the ancillary duties of cleaning and maintenance. *See id.* at 84:10-85:2. Ultimately, he even acknowledges that while there are "similarities" between the positions, there are "difference[s]" too. *See id.* at 85:3-12. The plaintiffs then look to the Lovelace deposition, but find only the same conclusory statements detached from any substantive discussion of job responsibilities. *See, e.g.*, Lovelace Dep. at 36:3, ECF 25-6 ("it's the same job"). None of this testimony is specific enough to dispute Wamsley's detailed and specific factual account.

Last, the plaintiffs fall back on their affidavits. *See* Opp'n at 15-17. All three affidavits

are carbon copies of the same twelve-paragraph account, save for the name of the affiant, and mostly reiterate the same general and conclusory statements that the plaintiffs' positions were "identical." *See* Schauer Aff. ¶¶ 6, 8-9; Jefferson Aff. ¶¶ 6, 8-9; Lovelace Aff. ¶¶ 6, 8-9. Such "conclusory" characterizations of the facts, "without more," are "insufficient to preclude granting the summary judgment motion." *See Wai Man Tom*, 980 F.3d at 1037, 1042 (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). In only one paragraph do the plaintiffs attempt to offer more detailed support for their conclusions, stating that the "work completed for each position included: management and provision of an individual's medication; meal preparation; assistance with getting dressed; assistance with using restroom facilities; assistance attending physicians' appointments; managing the individual's health needs; managing the individual's schedule; assistance with participation in leisure activities; cleaning the individual's residence; performing housekeeping chores, such as laundry; and implementing that individual's daily living program and related tasks." *See* Schauer Aff. ¶ 8; Jefferson Aff. ¶ 8; Lovelace Aff. ¶ 8. As the court has already explained, however, there is no dispute that each position "included" overlapping responsibilities. So again, this testimony fails to rebut the defendant's evidence detailing the distinctions between each role.

On top of all the deficiencies in the evidence the plaintiffs do offer is the absence of evidence from sources that would have most obviously supported the plaintiffs' claims. The plaintiffs assert that "the Defendant's payment structure is [] improper because it [was] designed to circumvent the purpose of the FLSA," but they offer no direct evidence of intent to support this claim. *See* Opp'n at 15. As circumstantial evidence, the complaint led with the allegation that Emerge originally paid the plaintiffs $15.00 an hour for their work regardless of when it was performed before adopting the three-position approach in 2019. *See* Compl. ¶¶ 11-12, ECF 3. At

11

the summary judgment stage, however, the plaintiffs have identified no evidence supporting this assertion. At the same time, the plaintiffs do not claim that their compensation for weekend work during overtime hours deviates from the wages of other employees hired to perform weekend work during straight-time hours, or that the defendant's compensation structure varies from comparable employers in the industry. Although the plaintiffs may have been able to substantiate their claims without evidence from any of these sources, such omissions, taken in combination with the plaintiffs' failure to provide specific evidence supporting their characterizations of Emerge's scheme, is telling.

All told, the plaintiffs have failed to "demonstrate specific, material facts," above "a mere scintilla of evidence," that could "give rise to a genuine issue" for trial. *Wai Man Tom*, 980 F.3d at 1037. Accordingly, the motion for summary judgment will be granted.

## CONCLUSION

As the court has explained above, even drawing all factual disputes and reasonable inferences in favor of the plaintiffs, they have failed to create a genuine issue of material fact that could permit a reasonable jury to enter judgment in their favor. The motion for summary judgment will therefore be granted.

A separate order follows.

 8/16/2023                                       /s/
_____                     _____
Date                                            Catherine C. Blake
                                                     United States District Judge